O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILDA V. A.,<br><br>       Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>       Defendant. | Case No.  5:22-cv-01064-KES<br><br>MEMORANDUM OPINION AND<br>ORDER |

**I.**

**BACKGROUND**

In 2013, Ms. Hilda V. A. ("Plaintiff") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability commencing May 20, 2013, due to synovial chondromatosis (i.e., benign tumors affecting the joints) and depression.  Administrative Record ("AR") 249-55.  In September 2016, Administrative Law Judge ("ALJ") Joseph P. Lisiecki, III issued a decision denying Plaintiff's applications.  AR 17-24.

Plaintiff appealed to the Central District of California.  On October 22, 2018, the Court reversed and remanded the decision of the Commissioner to allow consideration of opinion evidence from Plaintiff's vocational expert and for further proceedings consistent with the opinion.  AR 1111-21.

1

On November 16, 2018, the Appeals Council remanded the case for a new administrative hearing.  AR 1122-24.  ALJ Joel Tracy conducted a hearing on May 20, 2019, at which Plaintiff appeared with counsel and testified.  AR 1042-81.  On July 25, 2019, the ALJ issued an unfavorable decision.  AR 1021-33.

The ALJ found that Plaintiff suffered from the severe, medically determinable impairments ("MDIs") of "status-post right shoulder surgery and right shoulder synovial osteochrondromatosis" and degenerative disc disease of the cervical and lumbar spine.  AR 1024.  The ALJ also found that Plaintiff's "adjustment disorder" was an MDI, but non-severe.  AR 1024.  The ALJ determined that despite her MDIs, Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> [N]o overhead reaching with the right upper extremity but otherwise unlimited as to reaching; can frequently handle and finger with the right upper extremity; can occasionally climb ramps and stairs; can frequently stoop, crouch, crawl, kneel, and balance; can never climb ladders, ropes, and scaffolds; and can never work around fast moving heavy machinery.

AR 1027.  The ALJ found that Plaintiff could perform her past work as an accounting clerk; thus, she was not disabled.  AR 1031-33.

## II.

### ISSUES PRESENTED

Issue One:  Whether the ALJ erred in determining Plaintiff's RFC.  (Dkt. 24-1 at 18.[1])  Procedurally, Plaintiff contends that the ALJ was required (but failed) to (1) include work restrictions to account for all "mild" mental functional impairments or (2) explain in his written decision why none were necessary.  (Id. at 19-20.)  Substantively, Plaintiff contends that the ALJ's mental RFC

---

[1] Page cites refer to the pagination imposed by the Court's e-filing system.

1  determination lacks substantial evidentiary support.  (Id. at 21.)

2      Issue Two:  Whether the ALJ erred in evaluating a treating source statement

3  ("TSS" at AR 990-93) by physical therapist ("PT") Jocelyn Washington and signed

4  by Lesley Po, M.D., of Molina Healthcare.  (Dkt. 24-1 at 23.)

5      Issue Three: Whether the ALJ failed to discharge his legal duty to develop

6  the record.  (Id. at 32.)  Plaintiff contends that the ALJ failed to make "reasonable

7  efforts" to obtain treating records from Dr. Po after his medical office closed.  (Id.

8  at 36-37.)  Alternatively, Plaintiff contends that since the ALJ was unable to obtain

9  Dr. Po's records outside of a short period in 2016, the ALJ was required to order a

10  second consultative examination to evaluate Plaintiff's back pain.  (Id. 36-37.)

11                              **III.**

12              **SUMMARY OF THE ALJ'S REASONING**

13      The ALJ reviewed Plaintiff's medical records from June 2013 which showed

14  right shoulder synovial osteochondromatosis causing pain and a reduced range of

15  motion.  AR 1028.  In July 2013, Plaintiff had surgery to address this issue.  AR

16  432-33.  After reviewing Plaintiff's medical records, orthopedic consultative

17  examiner ("CE") Rajeswari Kumar, M.D., described the right-shoulder surgery as

18  an "open excision … with synovial debridement and removal of loose bodies;

19  roughly 70 removed."  AR 909.

20      After surgery, Plaintiff did physical therapy which improved her shoulder

21  function and mobility.  AR 1029-30; see AR 524 (7/23/13: Plaintiff "doing fine; a

22  little sore … felt fine while on vacation."  Her physical therapist "Anticipate[d] a

23  speedy recovery.").  In September 2013, Plaintiff was still "doing very well" post-

24  surgery.  AR 1029, citing AR 617.

25      The ALJ noted a gap in right-shoulder treatment records from September

26  2013 to April 2016.  AR 1029.  The ALJ concluded that because her medical

27  records reflect "benefits from surgery and physical therapy," Plaintiff could use her

28  right shoulder consistent with the assessed RFC.  AR 1029.

1    Regarding Plaintiff's degenerative disc disease, the ALJ summarized

2    treating records from 2014-2016, including an MRI.[2]  AR 1029-30.  The ALJ

3    concluded that these records showed "notable but not disabling" findings.  AR

4    1030.  In explaining this conclusion, the ALJ noted that on August 24, 2015,

5    Plaintiff wrote to the Social Security Administration requesting to cancel her

6    appeal because of medical improvement.  AR 1029.  Her letter states as follows:

7        Please cancel the appeal.  I have got well and [have] been working.  I

8        finished work assignment in May 2015 and I am looking for another

9        position.  Please disregard the appeal.  I was only applying for

10       disability for the year I was off and getting well.

11   AR 349; see also AR 999 (In March 2016, Plaintiff reported, "She did a lot of

12   moving this summer and helping others move with a lot of lifting and bending

13   activities.  She was starting to have pain towards the end of the day in her legs ….

14   She continues to be working in accounting.").

15       The ALJ's finding that Plaintiff was not suffering disabling pain is

16   consistent with those of the State agency consultants, both of whom opined in 2014

17   that Plaintiff could do light work.  AR 1030, citing AR 72-73, 115-16.  The ALJ

18   also gave great weight to the April 2014 opinions of CE Dr. Kumar.  AR 1030.  Dr.

19   Kumar observed Plaintiff to have a non-antalgic gait, normal range of neck motion,

20   and nearly normal range of back motion.  He was unable to test Plaintiff's right

21

22   _____

     [2] During these years, Plaintiff reported "falling at work" on April 7, 2014.

23   AR 918.  In August 2015, Plaintiff wrote that she "got well" and "has been

     working."  AR 349.  In May 2019, she testified that she had not "worked at all

24   since 2013."  AR 1049.  She later clarified that she made "a few attempts" to work,

     but her employers were dissatisfied with the "speed" of her job performance.  AR

25   2057.  At the July 2016 hearing, however, she testified that she lost her last

26   position because she could not do "reaching and lifting."  AR 34-35; see also AR

     997 (Plaintiff was "unsure she will be able to attend" a diabetes prevention

27   program in April 2016 "due to possible job start.").

28

4

shoulder because Plaintiff resisted moving it during the examination.  AR 911-14.
At the time of this examination, she was not taking pain medication.  AR 913.  Dr.
Kumar also opined that Plaintiff could do light work.  AR 914.

**IV.**

**DISCUSSION**

A. **ISSUE ONE: Incorporation of Mild PRT Findings into the RFC.**

       **1.  Relevant Administrative Proceedings.**

The ALJ evaluated the severity of Plaintiff's adjustment disorder by
engaging in the special psychiatric review technique ("PRT").  AR 1024-26.  The
PRT requires ALJs to consider the degree of mental impairment in four functional
areas: (1) understanding, remembering, and applying information; (2) interacting
with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting
and managing oneself.  AR 1025-26.  The ALJ found that Plaintiff had "mild"
impairments in all four areas.  A mild limitation means that the claimant's
independent, appropriate, and effective functioning in the specified area is "slightly
limited."  20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.00(F)(2)(b).  The ALJ based
these findings on (1) the opinions of two State agency psychological consultants
and a psychiatric CE, (2) "minimal evidence" of mental health treatment, and
(3) insufficient evidence of greater functional limitations.  AR 1024-26.

At the end of this analysis, the ALJ explained that his RFC assessment
"reflects the degree of limitation [he] found" during the PRT analysis.  AR 1026.

       **2.  Relevant Law.**

Plaintiff relies primarily on Hutton v. Astrue, 491 F. App'x 850 (9th Cir.
2012). (Dkt. 24-1 at 19.) In that case, an ALJ determined that a claimant with
PTSD had mild limitation in the area of maintaining concentration, persistence, or
pace.  Id. at 850.  The Ninth Circuit concluded that the ALJ erred in several ways,
including by failing to account for this limitation in the claimant's RFC.  Id. at 851.

Since Hutton, some district courts have found error when an ALJ finds a

5

mild mental limitation during the PRT and fails to craft a corresponding functional restriction for the RFC.  For example, in <u>Aida I. v. Saul</u>, 2020 U.S. Dist. LEXIS 15021 (S.D. Cal. Jan. 28, 2020), a psychiatric consultative examiner opined that the claimant was mildly limited in interacting with coworkers and the public, working without special supervision, and maintaining concentration.  The ALJ neither gave reasons for rejecting these opinions nor included them in hypotheticals posed to the VE, leading the VE to conclude that the claimant could do her past relevant work as a loan officer.  <u>Id.</u> at *14.  The district court questioned whether the VE would have testified that the claimant could work as a loan officer if the VE had been asked a hypothetical that included any kind of work restrictions accounting for the consultative examiner's opinions.  Due to the incomplete hypotheticals posed to the VE, the district court concluded that the ALJ's step four finding lacked substantial evidentiary support.  <u>Id.</u> at *16.  Similarly, in <u>Gates v. Berryhill</u>, No. ED CV 16-00049-AFM, 2017 U.S. Dist. LEXIS 75440 (C.D. Cal. May 16, 2017), the district court held that the ALJ erred by finding the claimant could do his past work as a budget analyst without discussing how "mild" limitations in social functioning would affect his RFC.

Other district courts have distinguished <u>Hutton</u>, ruling that if the ALJ (1) states that he/she considered whether the claimant's mild metal limitations would cause functional limitations and determined they would not; and (2) substantial evidence supports that determination, then the ALJ's decision must be affirmed on appeal.  For example, in <u>Ball v. Colvin</u>, No. CV 14-2110-DFM, 2015 U.S. Dist. Lexis 64152 (C.D. Cal. May 15, 2015), the ALJ found during the PRT that the claimant had "mild" limitations in conducting activities of daily living, social functioning, and maintaining concentration, but the ALJ did not include any related restrictions in the claimant's RFC, leading to a finding that she could do her past work as a film editor.  <u>Id.</u> at *4.  Relying on <u>Hutton</u>, the claimant argued that the ALJ had committed procedural error.  The district court disagreed

that mild PRT findings trigger a duty either to accommodate or explain, reasoning that "mild" limitations translate into a finding of "non-severe" for mental MDIs, and non-severe MDIs, by definition, do not cause more than a minimal limitation on one's ability to do basic work activities.  Id. at *7 ("[I]n many, if not most cases, there will be no functional limitations from a non-severe impairment.").

Similarly, in Deborah K. B. v. Saul, No. 2:20-cv-01703-JDE, 2020 U.S. Dist. LEXIS 221660 (C.D. Cal. Nov. 25, 2020), the ALJ found that the claimant had no limitation in understand information and "mild" limitations in the other three functional areas.  The ALJ did not include any mental restrictions in the claimant's RFC and found that she could do her past work as a gambling cashier. Id. at *11-12.  The court rejected a Hutton-based argument, pointing out that the claimant bears the burden of proving disability at step four and demonstrating prejudicial error on appeal.  There (as here), the claimant argued that it is reversible, procedural error if the ALJ finds a mental limitation during the PRT and fails to translate it into a work restriction or explain why not.  The claimant had not advanced any argument, supported by evidence, that her mental MDIs caused a functional limitation that precluded her from working as a gambling cashier.  She thus she failed to carry her burden on appeal.  Id. at *13-15.

The Ninth Circuit's recent decision in Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022) appears to resolve this conflict.  In Woods, the ALJ employed the PRT to find the claimant's depression and anxiety non-severe. The ALJ found that Woods had mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, but the ALJ did not include any mental restrictions in Woods's RFC.  Id. at 788, 795.  The ALJ concluded that Woods was not disabled because she could do her past relevant work as a hairstylist and cosmetologist.  Id. at 788.

On appeal, Woods argued that the ALJ was required to "assess" if/how her mild mental limitations reduced her ability to work (in other words, if/how they

1    translated into functional limitations) but failed to do so.  Id. at 794.  The Ninth
2    Circuit affirmed the ALJ's decision, finding no procedural error that would require
3    an administrative do-over.  The Ninth Circuit faulted Woods for failing to "identify
4    any particular evidence that the ALJ failed to consider or explain why the record
5    does not support the ALJ's findings regarding her mental functioning."  Id.  The
6    Ninth Circuit found the ALJ's decision procedurally sufficient, even though the
7    ALJ neither accommodated Woods's mild mental limitations in the RFC nor
8    explained why accommodations were unnecessary.

9              **3.  Analysis of Claimed Error.**

10                  a.  Alleged Procedural Error.

11           Plaintiff's procedural argument is that if an ALJ decides not to include any
12   functional restrictions in a claimant's RFC due to mild mental limitations assessed
13   during the PRT, then the ALJ must expressly explain why not.  (Dkt. 24-1 at 19.)
14   Plaintiff contends that the ALJ's statement that the RFC "reflects the degree of
15   limitation" found in the PRT analysis (AR 1026) is "boilerplate" and insufficient to
16   satisfy the procedural requirements for written decisions.  (Dkt. 24-1 at 21.)  In
17   Woods, however, the ALJ made nearly the same statement.  Leslie W. v. Comm'r
18   of Soc. Sec., District of Oregon, Case No. 3:20-cv-00805- BR, Dkt. 12-1, AR 45.[3]
19   The Ninth Circuit found no procedural error.  Woods, 32 F.4th at 794.  This Court
20   will follow the Ninth Circuit's published precedent.

21                  b.  Alleged Substantive Error.

22           To the extent Plaintiff contends that the ALJ's mental RFC determination
23   lacks substantial evidentiary support, Plaintiff points her poor performance at the
24   psychiatric evaluation on tests involving memory and math.  (Dkt. 24-1 at 19,
25   citing AR 906.)  But the psychiatric CE noted the inconsistency between her ability

26   _____

27           [3] This Court takes judicial notice of the ALJ's decision filed as part of the
     administrative record with the Oregon District Court.
28

1   to remember historical dates and upcoming medical appointments while failing to
2   recall any of four objects after three minutes.  AR 905-06.  The CE noted that
3   Plaintiff had worked in accounting and earned a master's degree in business
4   administration, but "when she was asked to subtract 7 from 10, she said she does
5   not know."  AR 906.  The CE concluded, "This was an indication that [she] was
6   not cooperating and was not setting forth her best effort."  AR 906.

7       Plaintiff also contends that medical evidence shows "she struggled managing
8   her stress."  (Dkt. 24-1 at 19, citing AR 392.)  The cited record is from an annual
9   physical in June 2013.  She endorsed an "unacceptable level" of stress "since her
10  mother died in March 2012."  AR 392.  She was offered a referral to behavioral
11  health to address her "grief reaction."  AR 392.  She continued working in the
12  months following her mother's death.  AR 279.

13      Finally, Plaintiff points to evidence that she had an anxious mood in group
14  therapy.  (Dkt. 24-1 at 19, citing AR 404.)  The cited record reflects that on August
15  20, 2013, Plaintiff attended her first 90-minute group therapy session to discuss
16  healthy eating.  She subjectively reported feeling anxious, but objectively, her
17  affect was "appropriate" and she "fit in well."  AR 404.

18      None of this evidence undermines the ALJ's well-supported decision not to
19  include mental work restrictions in Plaintiff's RFC.

20  B. **ISSUE TWO: The ALJ's Evaluation of PT Washington's TSS.**

21          **1.  Summary of the TSS.**

22      On April 29, 2016, PT Washington completed a TSS.  AR 990-93.  To
23  explain her treating relationship with Plaintiff, she wrote, "Performed initial
24  evaluation; gave standardized disability & recommended a plan of care of physical
25  therapy 2-3 times a week for twelve weeks minimum."[4]  AR 990.  She provided

26  _____

27          [4] It is unclear when this occurred.  No one has cited any treating records
    authored by PT Washington.  Plaintiff's PT after her July 2013 shoulder surgery
28  was with Frederick Heisler.  AR 518.  Plaintiff saw "Kelly" while Mr. Heisler was

9

physical therapy for Plaintiff's right-shoulder pain.  AR 990.  PT Washington opined that Plaintiff could not lift or carry any amount of weight without distinguishing between Plaintiff's right or left arm.  AR 991.  She also opined that Plaintiff was "unable" to stand or walk and could only sit one hour during an eight-hour workday.  AR 991.  PT Washington opined that Plaintiff needed a cane to walk more than 100 feet.  AR 991-92.  When asked to supply clinical findings to support these extreme opinions, PT Washington did not provide any.  Instead, she relayed Plaintiff's statements about using a cane.  AR 992.

### 2. The ALJ's Evaluation of the TSS.

The ALJ gave the TSS "little weight."  AR 1030.  After summarizing its findings, the ALJ found that the medical evidence "does not support such restrictive limitations."  AR 1030.  As contrary evidence, the ALJ identified the earlier-discussed medical records and Plaintiff's letter requesting to cancel her appeal as showing "improvement with surgery and physical therapy and acknowledged improvement in at least 2015."  AR 1030.

Along with the August 2015 letter, the ALJ also cited a record from February 2016 acknowledging improvement, as follows:

> [Plaintiff] states that she was moving in Sept. 2015 but "overdid it."
> She developed the low back pain at that time, but the pain resolved.
> About 2 months ago, the low back pain developed again. … Back
> pain is worse with prolonged sitting and standing; going upstairs.

AR 930-31.  While Plaintiff complained of lower back pain at that appointment, she had a "normal range of motion," and a straight-leg raising test was negative bilaterally.  AR 932-33.

Finally, the ALJ summarized the findings of Dr. Kumar and the State agency

---

on vacation.  AR 524.  Plaintiff's 2016 physical therapy, including the "PT Initial Evaluation," was with Shaun Meredith.  AR 999-1001.

consultants, which stand in stark contrast to those of PT Washington.  The ALJ
gave them "great weight."  AR 1030-31.

### 3. Analysis of Claimed Error.

Plaintiff contends that the ALJ failed to give "specific and legitimate"
reasons for discounting PT Washington's TSS.  (Dkt. 24-1 at 26.)  First, Plaintiff
contends that the ALJ failed to explain how the evidence of record contradicted the
TSS.  (Id. at 30.)  But the ALJ sufficiently explained his finding of inconsistency.
He noted that PT Washington's "restrictive limitations" purportedly based on
conditions that had existed since 2012 were inconsistent with Plaintiff's own
reports of later improvement.  AR 1030.

Next, Plaintiff contends that the ALJ was required discuss whether the TSS
was consistent with a 2014 cervical spine MRI.  (Id. at 29-31.)  But PT
Washington did not claim to treat Plaintiff for back or neck pain (AR 990) and the
TSS did not mention the MRI.  The ALJ adequately explained what other evidence
was inconsistent with the TSS.

Third, Plaintiff contends that the ALJ should have given more weight to the
TSS, as compared to the opinions of Dr. Kumar and the State agency consultants,
because PT Washington completed the TSS in 2016, whereas the other doctors
offered their opinions in 2014.  (Id. at 35.)  This argument does not establish legal
error, because the record supports the ALJ's finding that the TSS's extreme
limitations are inconsistent with other evidence from 2015 and 2016.

C. **ISSUE THREE: Development of the Record.**

### 1. Relevant Law.

A claimant bears the burden of proving disability and must furnish evidence
to satisfy that burden.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)
(citing 42 U.S.C. § 423(d)(5) and 20 C.F.R. § 404.1512(a) and (c)).
Notwithstanding that burden, an ALJ has an independent "duty to fully and fairly
develop the record and to assure that [a social security] claimant's interests are

considered." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983)) (citation and internal quotation marks omitted).  This duty, however, is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." <u>Mayes</u>, 276 F.3d at 459-60.

When triggered, the ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." <u>Tonapetyan</u>, 242 F.3d at 1150. ALJs shall "make every reasonable effort to help [claimants] get medical evidence from [their] own medical sources" when the claimants provide permission to make such requests.  20 C.F.R. § 416.912.

### 2. Relevant Administrative Proceedings.

At the July 2016 hearing, the parties agreed to make exhibits 1A-13F part of the record.  AR 33-34.  The representative's brief did not identify any deficit in the medical evidence.  AR 382-84.  Those exhibits show that Plaintiff lived in Minnesota when she had her 2013 shoulder surgery.  AR 432-33.  Per the exhibits, the earliest date Plaintiff saw Dr. Po in California was February 2016.  AR 929-47, 994-7 (records from February-April 2016).

On April 29, 2019, the ALJ's staff  mailed a request for records to Dr. Po's Ontario address.  AR 1233-37.  A similar request was faxed the next day.  AR 1238.  On May 9, 2019, the letter was returned as undeliverable.  AR 1239.  A second letter was mailed on May 16, and a second fax was sent.  AR 1262-68.

At the May 20, 2019 hearing, Plaintiff testified that she remembered when she began treating with Dr. Po (although that date is unclear), but "recently the office closed."  AR 1046-47.  After his office closed, she started to see a new doctor in Fontana.  AR 1047.  The ALJ asked counsel about the status of additional records from Dr. Po, mentioning a letter reflecting counsel's numerous

unsuccessful attempts to obtain more records. AR 1045-46, referring to AR 1227-30 (requesting Dr. Po's records from 2012-2019).

On May 22, 2019, and June 6, 2019, the ALJ mailed a request for records to Molina Healthcare in Ontario and Pomona. AR 1242-47, 1254-58. Both letters were returned as undeliverable. AR 1252, 1261. Similar faxes were sent the following day. AR 1248, 1259. On May 24, 2019, the ALJ received a response to a fax saying, "This is NOT our patient." AR 1282-83. On June 21, 2019, the ALJ advised Plaintiff's counsel to view Exhibits 34E, 35E, 36E, and 15F, the exhibits reflecting the returned mail and "not our patient" response. AR 1270, referring to AR 1242-1269, 1283-84.

Knowing this, on August 20, 2019, Plaintiff's counsel submitted a post-hearing brief that neither complained about the lack of additional records from Dr. Po nor requested a second orthopedic consultative examination. AR 1273-75. Counsel did not submit any records from the new doctor in Fontana.

### 3. Analysis of Claimed Error.

#### a. Dr. Po's Records.

Plaintiff fails to identify what additional reasonable steps the ALJ should have pursued to obtain records from Dr. Po, particularly after Molina Healthcare denied having Plaintiff as a patient. Plaintiff has not demonstrated legal error with this argument.

#### b. Second Orthopedic Consultative Examination.

Plaintiff argues that since the ALJ was unable to procure all of Dr. Po's records, the ALJ was required to order a second consultative examination to evaluate Plaintiff's more recent complaints of back pain. AR 36-37.

But Plaintiff underwent an orthopedic consultative examination with Dr. Kumar in April 2014. That physical examination revealed only mild finding. AR 909-14. In August 2015, she reported that she "got well" and had returned to work. AR 349. By March 2016, she was well enough to able to help others move

"with a lot of lifting and bending activities." AR 999.  Thus, there was sufficient evidence for the ALJ to determine that Plaintiff's back pain was not disabling, even without a second orthopedic consultative examination.  Moreover, at her appointment with Dr. Kumar, he could not evaluate her then-chief complaint, i.e., right-shoulder pain, because she resisted moving her right arm during the examination.  AR 911-14.  Similarly, at Plaintiff's psychiatric consultation, she failed to cooperate and put forth her best effort.  AR 906.  This background calls into question the utility of a second orthopedic consultative examination and provides an additional reason why the ALJ did not err by failing to order it.

## V.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that (1) Plaintiff's motion for summary judgment (Dkt. 24) shall be DENIED; (2) Defendant's motion for summary judgment (Dkt. 29) shall be GRANTED; and (3) judgment shall be entered AFFIRMING the decision of the Commissioner.


DATED:  January 30, 2023

_____
KAREN E. SCOTT
United States Magistrate Judge

14